## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                              No. 4:10CV00327 JLH

STATE OF ARKANSAS; MIKE BEEBE,
Governor of the State of Arkansas, in his official
capacity only; JOHN M. SELIG, Director of the
Arkansas Dept. of Human Services, in his official
capacity only; JAMES C. GREEN, Director of the
Arkansas Division of Developmental Disabilities
Services, in his official capacity only; and
GENE GESSOW, Director of the Arkansas
Division of Medical Services, in his official capacity only      DEFENDANTS

## OPINION AND ORDER

        This is the second case brought by the Department of Justice on behalf of the United States

of America, as plaintiff, against the State of Arkansas, alleging that the State violates the Americans

with Disabilities Act in the manner in which it provides services to persons with developmental

disabilities.  In the earlier action, the Department of Justice alleged that the State of Arkansas

violates the Fourteenth Amendment to the Constitution of the United States, the Americans with

Disabilities Act, 2 U.S.C. §§ 12101-12213, and the Individuals with Disabilities Education Act,

20 U.S.C. §§ 1400-1482, in the manner in which it provides services to residents of the Conway

Human Development Center.[1]  The Conway Human Development Center Action was brought by the

Department of Justice pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C.

§ 1997a.  The present action is brought against the State of Arkansas alleging that the State

discriminates against persons with disabilities in violation of Title II of the Americans with

_____

        [1] *United States of America v. State of Arkansas, et al.*, E.D. Ark. No. 4:09CV00033 JLH.
The Court will refer to this action as "the Conway Human Development Center Action."

Disabilities Act, 42 U.S.C. §§ 12131-12134,[2] at six human development centers located throughout the State.  The complaint alleges that the State receives Medicaid funding from the United States Department of Health and Human Services for the six human development centers, which are certified for Medicaid purposes to care for individuals as intermediate care facilities for the mentally retarded.[3]  Unlike the Conway Human Development Center Action, in this case the Department of Justice does not allege or argue that it is bringing the action pursuant to the Civil Rights of Institutionalized Persons Act.

The State has moved to dismiss the complaint, arguing that the Department of Justice has not fulfilled the procedural requirements stated in the statutes and in the Code of Federal Regulations as prerequisites for filing suit under Title II and that the United States does not have standing to bring this action.[4]

---

[2] Title II prohibits discrimination based on disability in public services furnished by governmental entities.  *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 589, 119 S. Ct. 2176, 2181, 144 L. Ed. 2d 540 (1999).

[3] The complaint in this action does not identify the six human development centers at issue, but the record includes a letter dated December 14, 2009, in which the Department of Justice informed the Governor of Arkansas that the Department of Justice was investigating five human development centers, which were the Alexander Human Development Center, the Arkadelphia Human Development Center, the Booneville Human Development Center, the Jonesboro Human Development Center, and the Southeast Arkansas Human Development Center in Warren, Arkansas.  With the addition of the Conway Human Development Center, these were all of the human development centers in the State of Arkansas.

[4] The State's motion is styled a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, but whether the motion should properly be characterized as brought pursuant to Rule 12(c) or Rule 12(b)(6) is an issue that the parties have not addressed and that probably does not materially effect the resolution of the motion.  *Cf. Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).

The enforcement provision of Title II is contained in 42 U.S.C. § 12133, which provides:

> The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.

Section 794a of Title 29 is the enforcement provision of the Rehabilitation Act of 1973.[5]

That statute provides, in pertinent part:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal Assistance or Federal Provider of such assistance under section 794 of this title.

Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, or national origin on the part of any program or activity funded by federal financial assistance. 42 U.S.C. § 2000d.  The enforcement provision of Title VI is found in 42 U.S.C. § 2000d-1, which provides, in pertinent part:

> Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity . . . is authorized and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability . . . .  Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement . . . or (2) by any other means provided by law: *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means.

---

[5] The Rehabilitation Act of 1973 prohibits discrimination on the basis of disability in programs conducted by federal agencies, in federal employment, and in employment by federal contractors.  29 U.S.C. § 794.  *See McCachren v. Blacklick Valley Sch. Dist.*, 217 F. Supp. 2d 594, 599-600 (W.D. Pa. 2002), for a good summary of other provisions of the Rehabilitation Act and their enforcement provisions.

As this recitation of the statutory provisions indicates, the provision for enforcement of Title II of the ADA incorporates by reference the enforcement provisions of statutes that prohibit discrimination in programs and activities that are federally funded, even though the applicability of Title II is not dependent upon the receipt of federal funds. *United States v. City and Cnty. of Denver*, 927 F. Supp. 1396, 1399 (D. Colo. 1996). "By incorporating one section after another by reference—sections that mesh only imperfectly—Congress could not have made its intention less clear." *Tyler v. City of Manhattan*, 118 F.3d 1400, 1409 (10th Cir. 1997) (Jenkins, J., dissenting).

Termination of federal funds "was envisioned as the primary means of enforcement under Title VI[.]" *Nat'l Black Police Ass'n, Inc. v. Velde*, 712 F.2d 569, 575 (D.C. Cir. 1983). Nevertheless, as 42 U.S.C. § 200d-1 states, enforcement can be accomplished "by any other means provided by law[.]" In *City and Cnty. of Denver*, the District of Colorado stated:

> Courts have interpreted the words "by any other means authorized by law" to mean that a funding agency, after finding a violation and determining that voluntary compliance is not forthcoming, could refer a matter to the Department of Justice to enforce the statute's nondiscrimination requirements in court.

*City and Cnty. of Denver*, 927 F. Supp. at 1400 (citing *Nat'l Black Police Ass'n, Inc. v. Velde*, 712 F.2d at 575 & n.33; and *United States v. Marion Cnty. Sch. Dist.*, 625 F.2d 607, 612 & n.12 (5th Cir. 1980)). In the *Marion Cnty. Sch. Dist.* case, the Fifth Circuit held that Congress had intended the language "any other means authorized by law" to include suits by the government to enforce contractual assurances. *Id.* The Fifth Circuit appended to its opinion an agreement by the Marion County School District to comply with Title VI of the Civil Rights Act of 1964, in consideration for the federal funds that it was to receive. Here, although the Department of Justice has alleged in the complaint that the human development centers at issue receive Medicaid funding, it does not allege that the Medicaid funding is conditioned upon compliance with the Americans with Disabilities Act,

nor does the Department of Justice argue that it is seeking to enforce any sort of agreement between the State of Arkansas and any federal agency.

The Department of Justice has issued guidelines for the enforcement of Title VI of the Civil Rights Act of 1964. *See* 28 C.F.R. § 50.3. Those guidelines make clear that the primary responsibility for enforcing Title VI lies with the head of the department or agency that administers the program for federal financial assistance. 28 C.F.R. § 50.3(b). The ultimate sanction, according to the Department of Justice guidelines, is to terminate the federal financial assistance. 28 C.F.R. § 50.3(c)(I.A).[6] The guidelines recognize that compliance with Title VI may be obtained through court action and state that the possibility of court enforcement should be considered in consultation with the Department of Justice. 28 C.F.R. § 50.3(c)(I.B.1). The guidelines are silent on the issue of whether the Department of Justice can initiate litigation to enforce compliance with Title VI apart from the agency that administers the federally funded program issue, but, from a reading of the guidelines as a whole, it is clear that the guidelines envision that the agency administering the federally funded program is the agency that would enforce Title VI, whether by terminating federal funds, by seeking court enforcement, or by other means.

Whether or not the Department of Justice has the authority to commence a court action to enforce the provisions of Title VI apart from the agency that provides the federal funding at issue, for purposes of the present case the Court will assume that the Department of Justice has the independent authority to institute a civil action to enforce the public service provisions of the

---

[6] As noted, the Rehabilitation Act incorporates by reference the enforcement provision in Title VI. The Fifth Circuit has held that the United States has the authority under the Rehabilitation Act to seek enforcement to enforce an agreement by the recipient of federal funds to comply with the Rehabilitation Act. *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039 (5th Cir. 1984).

Americans with Disabilities Act.  As noted, the public service provisions of the ADA do not depend on federal financial assistance as a condition of their applicability.  Congress did, however, instruct the Attorney General to promulgate regulations for the enforcement of the ADA, *see* 42 U.S.C. § 12134, so the Department of Justice is the closest Title II analogue to an agency providing federal funds and therefore charged with enforcing Title VI.

Even so, the State of Arkansas argues that the Department of Justice has not complied with the statutory and regulatory prerequisites to commencing an action in court.  As noted, the statute provides that "no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means."  The enforcement regulations for Title II of the ADA are found in 28 C.F.R. pt. 35, subpart F.  Those regulations contemplate an administrative process that would include (1) a complaint of discrimination by an individual to an agency with jurisdiction over the subject matter (28 C.F.R. § 35.170); (2) an attempt at informal resolution (28 C.F.R. § 35.172); (3) a formal letter of compliance or noncompliance (*Id.*); and (4) potentially a referral by the federal agency to the Attorney General for enforcement (28 C.F.R. §§ 35.173 and 35.174).

The administrative process described in 28 C.F.R. § 35.170 *et seq.*, admittedly was not followed in this case.  The Department of Justice argues that it has the authority to enforce the ADA without going through that process, which is designed for the situation in which an individual makes a complaint to a federal agency.  Here, no individual has complained of discrimination on the basis of disability, and no agency has made a referral of any kind to the Department of Justice.

The Department of Justice concedes that it is required to comply with the statutory prerequisites stated in 42 U.S.C. § 2000d-1.  The Department of Justice, however, did not make any allegations in its complaint to indicate that it had complied, or attempted to comply, with the prerequisites to suit stated in 42 U.S.C. § 2000d-1.  The Department of Justice did not allege that, before filing suit, it advised "the appropriate person or persons of the failure to comply" with the ADA nor that the Department of Justice had "determined that compliance cannot be secured by voluntary means."  Neither party has cited authority on the issue of whether these prerequisites to suit must be alleged in the complaint.  Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include a short and plain statement of the grounds for the court's jurisdiction and a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(1) and (2).  Because the Department of Justice is not entitled to seek relief unless it has advised the "appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means[,]" it would seem that Rule 8(a) requires that the complaint include allegations sufficient to indicate that those prerequisites to suit have been met.

Instead of arguing that the complaint includes allegations that the prerequisites to suit have been met, or arguing that Rule 8(a) does not require such allegations for the complaint to state a claim upon which relief may be granted, the Department of Justice ignores its own pleading and argues that, as a factual matter, it has satisfied with the prerequisites to suit.

In support of its argument that, as a factual matter, it has satisfied the statutory prerequisites to suit, the Department of Justice has attached to its brief the aforementioned letter dated December 14, 2009, to Governor Mike Beebe; a letter dated April 21, 2004, to former Governor Mike Huckabee; and an exchange of emails between counsel regarding "the complaint paperwork"

for a "statewide ADA lawsuit." In addition to those documents, the Department of Justice contends that arguments that it has made in the Conway Human Development Center Action satisfy the statutory prerequisites and that, further, in March 2010 "after touring two other Human Development Centers, the United States again gave detailed verbal notification to the State of systematic ADA violations."

"When considering a motion for judgment on the pleadings . . . or a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks and citations omitted). The letters to Governors Huckabee and Beebe do not contradict the complaint and arguably are part of the public record. In any event, the State has not argued that the Court should disregard them, so they will be considered.

The letter dated December 14, 2009, to Governor Beebe states:

> This is to inform you that the United States Department of Justice is commencing an investigation to determine whether residents of the Alexander Human Development Center ("HDC"), Arkadelphia Human Development Center, Booneville Human Development Center, Jonesboro Human Development Center, and Southeast Arkansas Human Development Center in Alexander, Arkadelphia, Booneville, Jonesboro, and Warren, Arkansas, respectively, are being served in the most integrated setting appropriate to their needs, pursuant to our authority under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132. We are also commencing an investigation of conditions of residents' care and treatment at the Alexander, Arkadelphia, Booneville, Jonesboro, and Southeast Arkansas HDCs pursuant to our authority under the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997.
>
> In conducting the CRIPA investigation, we are obliged to determine whether there are systemic violations of the Constitution or other laws of the United States in the conditions at the Alexander, Arkadelphia, Booneville, Jonesboro, and Southeast

Arkansas HDCs. Our investigation will focus on placement of residents in the most integrated setting as required by the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12132-34, and its implementing regulations, as well as the protection of residents from harm, behavioral treatment and habilitation, medical and nursing care, physical and nutritional management.

We have not reached any conclusions about the subject matter of the investigations. We believe that you and other State officials want to operate the Alexander, Arkadelphia, Booneville, Jonesboro, and Southeast Arkansas HDCs consistent with the requirements of the Constitution and other federal law. During the course of our investigation, we will consider all relevant information, particularly the efforts the State has undertaken to ensure compliance with federal law. We also will offer to provide recommendations on ways to improve conditions at the HDCs, when appropriate. If we conclude that there are not violations of constitutional or other federal rights, we will notify you that we are closing the investigation.

If, on the other hand, we conclude there are such violations, we will provide detailed, written findings and identify the minimum measures we believe are necessary to remedy the violations. In addition, we will identify any financial, technical, or other assistance the United States may be able to provide to assist the State in correcting the identified deficiencies. In over 25 years of enforcing the Civil Rights of Institutionalized Persons Act and in over 10 years of enforcing Title II of the ADA, the good faith efforts of State or local jurisdictions working with us have enabled us routinely to resolve our claims without resort to contested litigation.

As the reader can see, this letter does not say that the State has failed to comply with the ADA at any of the five human development centers mentioned in the letter. Instead, it says that the Department of Justice is commencing an investigation and, "we have not reached any conclusions about the subject matter of the investigations." The letter goes on to say that if the Department of Justice were to conclude that the law had been violated, it would provide detailed, written findings and would identify the minimum measures necessary to remedy the violations. So far as the record shows, the Department of Justice has not provided the detailed written findings as promised in that letter, nor has it identified measures necessary to remedy the violations. The letter dated December 14, 2009, does not show that the Department of Justice complied with the statutory prerequisites to filing suit as stated in 42 U.S.C. § 2000d-1.

In contrast to the letter of December 14, 2009, to Governor Beebe, the letter dated April 21, 2004, to Governor Huckabee, states in the first sentence that the letter is written "to report the findings of the Civil Rights Division's investigation of conditions at the Conway Human Development Center . . . in Conway, Arkansas."  The letter reports those findings in substantial detail in a span of some fifty pages, and it describes the measures that the Department of Justice deemed necessary to remedy the alleged violations.  The letter includes findings regarding Title II of the ADA.  Those findings are specific to residents of the Conway Human Development Center.  No other human development center is mentioned anywhere in that letter.  That letter does not constitute notice to the State that the Department of Justice found violations of Title II of the ADA at any human development center other than the Conway Human Development Center.

The final documentation attached to the Department of Justice's response consists of an email from Lori Freno, Senior Assistant Attorney General representing the State in this action and in the Conway Human Development Center Action, to attorneys at the Department of Justice asking for "a copy of the complaint paperwork" regarding the "statewide ADA lawsuit."[7]  It is obvious from the email request that some mention of a "statewide ADA lawsuit" had been made in a telephone conversation, but there is no indication that the Department of Justice had advised any person with responsibility for the human development centers of the alleged failure to comply with the ADA and determined that compliance cannot be secured by voluntary means.  No indication is given as to what was said in the telephone conversation that precipitated Ms. Freno to request a copy of the "complaint paperwork."

---

[7] It is not apparent that the email exchange is the sort of record that the Court may consider in ruling on a 12(b)(6) or 12(c) motion, but in this instance the outcome is unchanged.

The Department of Justice makes reference to a brief that it filed in support of its motion for preliminary injunction on March 10, 2010, in the Conway Human Development Center Action. Needless to say, that brief focuses on the Conway Human Development Center, which is the only facility at issue in the case.  Some sentences in the brief make a broader reference, but that brief can hardly be taken as notice that the Department of Justice has investigated five human development centers other than the Conway Human Development Center and found that the State violates the ADA at all five facilities in the manner in which plaintiff in this case alleges.

Finally, the Department of Justice says in its brief in opposition to the motion to dismiss, "In late March 2010, after touring two other Human Development Centers, the Department of Justice again gave detailed verbal notification to the State of systemic ADA violations."[8]  That cursory statement is the totality of the information provided by the Department of Justice with regard to this alleged verbal notification.  There is no evidence or indication as to who made the comments, to whom the comments were made, or what the contents of the comments were.  The Court cannot find based on this one sentence in a brief that the Department of Justice has complied with the statutory prerequisites for filing suit stated in 42 U.S.C. § 2000d-1.

Nor is there any allegation in the complaint or documentation from the public record that the Department of Justice has attempted to obtain compliance by voluntary means.  The Department of Justice argues in its brief that it is not necessary to attempt to obtain voluntary compliance before filing suit because the statute requires only that the agency determine that compliance cannot be secured by voluntary means.  The Department of Justice says in its brief that it determined that

---

[8] This statement is unsupported by any document or testimony and is not really appropriate for consideration in ruling on a motion made pursuant to Fed. R. Civ. P. 56, 12(b)(6), or 12(c).

compliance cannot be obtained by voluntary means based upon the history of litigation with the State in the Conway Human Development Center Action, in which efforts were made to obtain voluntary compliance at the Conway Human Development Center between 2004, when the letter was sent to Governor Huckabee, and 2009, when suit was filed.

The Department of Justice's argument in this case that it need not make an effort to obtain voluntary compliance but only determine that compliance cannot be secured by voluntary means is at odds with its own interpretation of the statute as stated in the guidelines for the enforcement of Title VI. The guidelines issued by the Department of Justice state:

> Title VI requires that a concerted effort be made to persuade any noncomplying applicant or recipient voluntarily to comply with Title VI. Efforts to secure voluntary compliance should be undertaken at the outset in every noncompliance situation and should be pursued through each stage of enforcement action.

28 C.F.R. § 50.3(c), I.C. Thus, the Department of Justice interprets 42 U.S.C. § 2000d-1 to require that "a concerted effort" be made to obtain voluntary compliance, not that an agency need merely determine that compliance cannot be secured by voluntary means.

## CONCLUSION

Because the Department of Justice has not made allegations in the complaint sufficient to indicate that it has complied with the statutory prerequisites to suit, the complaint fails to comply with the requirements of Rule 8(a) and therefore should be dismissed without prejudice.[9] Moreover, even considering the facts outside the pleadings submitted by the Department of Justice, those facts are insufficient to show that the Department of Justice has complied with the prerequisites to filing suit as stated in 42 U.S.C. § 2000d-1. Accordingly, the complaint is dismissed without prejudice.

---

[9] Accordingly, the Court need not and does not reach the issue of whether the Department of Justice must comply with 28 C.F.R. § 35.170 *et seq.*, before commencing legal action.

IT IS SO ORDERED this 24th day of January, 2011.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE